2005 ME 76

**STATE of Maine**

v.

**Michael D. WILLINGS.**

Supreme Judicial Court of Maine.

Submitted On Briefs: May 17, 2005.
Decided: June 22, 2005.

Geoffrey A. Rushlau, District Attorney, Rockland, for the State.

William S. Maddox, Esq., Rockland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

ALEXANDER, J.

[¶ 1] Michael D. Willings appeals from a judgment of the Superior Court (Knox County, *Atwood, J.*) finding him guilty, after a jury trial, of harassment (Class E), 17–A M.R.S.A. § 506–A(1) (Supp.2000).[1] Willings asserts that the trial court erred by (1) allowing the case to be presented and instructing the jury on the theory of accomplice liability; (2) joining his case for trial with that of the codefendant; (3) allowing use of inadmissible hearsay evidence; (4) refusing his request to discharge his court-appointed counsel and appoint a new attorney to the case; and (5) denying his motion for a new trial based on insufficiency of the evidence to convict him. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] In 2001, Michael Willings and Steven Schoff were inmates at the Maine State Prison. Schoff was serving a sentence for the murder of a twenty-year-old man.

[¶ 3] Schoff had obtained the home address of the mother of the murder victim. In April 2001, Schoff sent the murder victim's mother a letter that demeaned her deceased son and her own efforts to increase public awareness of the concerns and interests of murder victims' relatives. As a result of this action, the Department of Corrections issued a harassment notice to Schoff, directing that he not harass the victim's parents and warning that he could be subject to prosecution if he engaged in any further harassment.[2]

[¶ 4] In July 2001, Willings, at the behest of Schoff, sent the victim's mother an envelope enclosing a prayer card with the words "Happy Birthday" written on it and a 5″ × 7″ color photo of her son's bloody body in the trunk of a car.

[¶ 5] After being notified of this mailing, corrections officers searched the separate cells of Schoff and Willings at the Maine State Prison. In Schoff's cell, corrections officers found an address book including the victim's parents' home address and some newspaper clippings about actions by the victim's parents. In Willings's cell, corrections officers found the victim's parents' home address written on a piece of paper.

[¶ 6] Several days after the search of their cells, a corrections officer heard a conversation between Schoff and Willings in which they talked about sending a photograph in the mail. The corrections officer heard Schoff tell Willings that, "all they can do is give you a warning. They can take me down town for more charges." Schoff was then heard to make a comment critical of the victim's mother.

[¶ 7] Schoff and Willings were then observed to engage in what appeared to be a staged fight. After that event, Willings stated to a corrections officer that Schoff had "involved him in something that he shouldn't have." Willings also asserted to the corrections officer that he and Schoff had been fighting over a card and picture that had been sent to the victim's mother. Willings also stated in an administrative hearing that he had sent the envelope to

---

1. The harassment law applicable to this case has been changed by amendments enacted by P.L.2001, ch. 383, §§ 66, 67 (effective January 31, 2003) (codified at 17–A M.R.S.A. § 506–A (Supp.2004)).

2. The harassment notice was issued pursuant to 17–A M.R.S.A. § 506–A(1) (Supp.2000) authorizing issuance of such notices by Department of Corrections officials.

the victim's mother, but that he did not know who she was. Willings later asserted that he had sent the envelope and that Schoff had not known in advance about his sending it.

[¶ 8] Schoff later stated in a letter to a corrections officer that he was not aware that Willings had sent the card and photograph to the victim's mother before the envelope was sent. Schoff also stated that he had given his legal documents to Willings because Willings had expressed an interest in reading them.

[¶ 9] Schoff and Willings were both charged with harassment (Class E) in violation of 17–A M.R.S.A. § 506–A(1). Both requested a jury trial, and their cases were removed to the Superior Court. At one point, Willings wrote to the court asking to have his court-appointed counsel discharged and to have substitute counsel appointed. The court did not grant this request. The State sought to consolidate the complaints for trial pursuant to M.R.Crim. P. 8(c). Over Willings and Schoff's objections, the motion for consolidation was granted and the cases were tried together. Schoff then waived his right to a jury trial. Willings continued to have the case tried before a jury.

[¶ 10] Neither Willings nor Schoff testified at the trial. Over Willings's objections, the trial court allowed the State to offer the evidence regarding the conversations between Willings and Schoff and other statements by Willings.

[¶ 11] At the close of the case, and over Willings's objection, the court instructed the jury on the theory of accomplice liability. Before closing arguments, Willings waived his right to counsel and conducted his own closing argument, with his court-appointed counsel acting as standby counsel during closing argument.

[¶ 12] The jury found Willings guilty of harassment. Schoff was found guilty by the court. Willings received a sentence of five months to the Department of Corrections. Willings then brought this appeal.

## II. ACCOMPLICE LIABILITY

[¶ 13] To convict a person of harassment pursuant to 17–A M.R.S.A. § 506–A(1) (Supp.2000), the State had to prove, beyond a reasonable doubt, that the person, "without reasonable cause," engaged "in any course of conduct with the intent to harass, torment or threaten another person," after that person had previously been forbidden to engage in such harassing conduct by a law enforcement or corrections officer.

[¶ 14] Willings had never been forbidden to harass the victim's mother. Therefore, he contends, he could not have been found guilty of the crime of harassment. He also asserts that, since he could not commit the crime of harassment, he could not have been found guilty of committing the crime as an accomplice.

[¶ 15] A person may be guilty of a crime as an accomplice pursuant to 17–A M.R.S.A. § 57(3)(A) (1983) if, with the intent that the crime be committed, the person aids, or agrees to aid, or attempts to aid another person in the planning or commission of the crime. *State v. Pheng,* 2002 ME 40, ¶ 8, 791 A.2d 925, 927. Accomplice liability may attach upon the State's proof of any conduct promoting or facilitating, however slightly, the commission of the crime. *Id.* ¶ 9; *State v. Kaler,* 1997 ME 62, ¶ 7, 691 A.2d 1226, 1229.

[¶ 16] The accomplice liability statute provides that: "A person who is legally incapable of committing a particular crime himself may be guilty thereof if it is committed by the conduct of another person for which he is legally accountable."

17–A M.R.S.A. § 57(4) (1983). Even though Willings could not be convicted of the crime of harassment as a principal, because he had not previously been forbidden, by an appropriate officer, from engaging in harassing conduct towards the victim's mother, he could be criminally responsible as an accomplice for aiding Schoff's harassment of the victim's mother.

[¶ 17] The evidence establishes that Willings aided Schoff in harassing the victim's mother by sending her the harassing materials that Schoff himself had been prohibited from sending. In these actions, the jury could find that Willings intended to facilitate Schoff's commission of the crime of harassment and, in fact, assisted in the commission of the crime by sending the materials to the victim's mother. Thus, there was sufficient evidence for the jury to find Willings guilty of the crime of harassment on the theory of accomplice liability, although he could not have been found guilty of the crime of harassment as a principal.

[¶ 18] In addition to asserting that the issue of accomplice liability should not have been presented to the jury, Willings also contends that the instructions on accomplice liability given to the jury were themselves erroneous. However, review of the instructions indicates that the court properly instructed the jury on the accomplice liability issues.

### III. OTHER ISSUES

[¶ 19] The court acted within the range of its discretion in joining the complaints against Schoff and Willings for trial. *State v. Chesnel,* 1999 ME 120, ¶ 13, 734 A.2d 1131, 1136; *State v. Boucher,* 1998 ME 209, ¶ 9, 718 A.2d 1092, 1094. The court also did not err in admitting the corrections officer's testimony regarding the conversations between Willings and Schoff that were overheard by the correc-

tions officer after the harassment occurred. The conversations between Willings and Schoff discussing the elements of the crime of harassment and how those elements might be covered up to avoid criminal liability were properly admitted as statements by co-conspirators during the course of and in furtherance of the conspiracy. M.R. Evid. 801(d)(2)(E). *See United States v. Nixon,* 418 U.S. 683, 700–01, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

[¶ 20] The other claims of error do not merit further discussion.

The entry is:

Judgment affirmed.