MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 157
Docket:      Cum-18-485
Argued:      October 10, 2019
Decided:     November 7, 2019

Panel:       ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

DAVID W. MARBLE JR.

GORMAN, J.

[¶1]  David W. Marble Jr. appeals from a judgment of conviction of two counts of intentional or knowing murder, 17-A M.R.S. §§ 201(1)(A) (2018), 1158-A(1)(B) (2015),[1] entered by the trial court (Cumberland County, *Murphy, J.*) after a jury trial.[2]  Marble argues that the court erred in denying his motion to suppress evidence of his cell site location information because the information was obtained through a search warrant issued without probable cause.  We affirm the judgment.

---

[1] Title 17-A M.R.S. § 1158-A has since been repealed and replaced.  *See* P.L. 2019, ch. 113, §§ A-1, A-2 (effective May 16, 2019) (to be codified at 17-A M.R.S. § 1504.)

[2] Marble was also convicted of illegal possession of a firearm by a prohibited person (Class C), 15 M.R.S. § 393(1)(C) (2015), after waiving his right to a jury trial on that count.  *See* P.L. 2015, ch. 470, § 1 (effective July 29, 2016 (amending 15 M.R.S. § 393(1), but not in any way relevant to this appeal).  Marble does not challenge this conviction on appeal.

## I. BACKGROUND

[¶2]  On December 26, 2015, a detective investigating two apparent homicides applied for a search warrant for the historical cell site location information (CSLI) of seven telephone numbers, including Marble's, that were in contact with the cell phone of one of the victims in the hours before he was killed.  The detective's affidavit supporting the warrant application averred the following facts relevant to the existence of probable cause to justify a search Marble's cell phone records.  *See State v. Nunez*, 2016 ME 185, ¶¶ 18-20, 153 A.3d 84.

[¶3]  At approximately 3:30 a.m. on December 25, 2015, a woman called 9-1-1 reporting that she had been shot.  The police were able to track the 9-1-1 call to the area of Summerhaven Road in Manchester, Maine; when the police arrived, they found the bodies of one male victim and one female victim in a car they later learned belonged to the male victim.  No gun was found at the scene, but a cell phone was found in the female victim's lap.  This cell phone—which belonged to the male victim—was the phone used to make the 9-1-1 call.

[¶4]  Marble was a drug dealer operating in Maine and the male victim worked for him.  Two days before the murders, the male victim was supposed to collect money from another drug dealer and bring it to Marble but he did not

do so. That same day, Marble obtained two handguns. On December 24, eight calls were made to the male victim's home phone from Marble's cell phone number. Just hours before the murders, the male victim and some friends broke into Marble's apartment while Marble was not there and stole televisions, backpacks, guns, and drugs. Sometime after the male victim left Marble's apartment but while the friends were still there, the male victim sent one of the friends a text message that read "leave." Marble's cell phone was used to call the male victim's cell phone at 2:14 a.m. on December 25, just eighty minutes before the 9-1-1 call.

[¶5] Based on the affidavit, a judge (Kennebec County, *Dow, J.*) issued a search warrant authorizing the seizure of records associated with seven cell phone numbers, including Marble's.[3] The police executed the warrant and obtained, from Marble's cell phone service provider, Marble's CSLI.

[¶6] On February 18, 2016, Marble was indicted on two counts of intentional or knowing murder, 17-A M.R.S. §§ 201(1)(A), 1158-A(1)(B), for both deaths.[4] Marble moved to suppress the evidence of his CSLI. After a

---

[3] In addition to the location information, the search warrant authorized the police to obtain Marble's cell phone content, such as text messages, voice mails, and call logs. Marble challenges only the seizure of his CSLI.

[4] Marble was indicted in Kennebec County, but the case was transferred to Cumberland County after the court (*Murphy, J.*) granted Marble's motion to change venue.

4

testimonial hearing[5] held in July of 2018, the court (Cumberland County, *Murphy, J.*) denied Marble's motion, concluding that the affidavit established "sufficient probable cause to believe that Mr. Marble was involved in these homicides and further that evidence of the crimes of homicide could be located in his phone."

[¶7] Two weeks later, the court conducted an eight-day jury trial. Viewing the evidence in the light most favorable to the jury's verdict, the jury rationally could have found the following facts. *See State v. McBreairty*, 2016 ME 61, ¶ 2, 137 A.3d 1012.

[¶8] Marble was involved in drug trafficking in the Augusta area and the male victim worked for him. In the early morning hours of December 25, 2015, the male victim and some friends decided to burgle Marble's Augusta apartment. When Marble returned to the apartment, he discovered that the apartment had been burgled and expressed a belief that the male victim was responsible. Along with two associates, Marble drove with the victims out to Summerhaven Road, where Marble shot and killed each of them.

---

[5] At the commencement of the hearing, the court made clear that its determination of whether the search warrant was supported by a showing of probable cause would be based on the information contained within the four corners of the affidavit. The court took testimony, however, on some terminology used in the affidavit.

[¶9]  At the end of the trial, the jury found Marble guilty of both murder counts.  On November 9, 2018, the court sentenced Marble to a term of life imprisonment for the murder of the female victim and a concurrent term of seventy-five years in prison for the murder of the male victim.  Marble timely appealed from the resulting judgment.  *See* 15 M.R.S. § 2115 (2018); M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

[¶10]  Marble argues that the judge who issued the warrant permitting the officers to obtain his CSLI erred in determining that there was probable cause supporting the warrant's issuance.  When a trial court denies a motion to suppress evidence obtained pursuant to a search warrant, we "review directly the finding of probable cause made by the judicial officer who issued the warrant, affording that finding great deference."  *State v. Samson*, 2007 ME 33, ¶ 11, 916 A.2d 977.  Our inquiry is limited to the question of "whether there was a substantial basis for the single required finding of probable cause," *State v. Nickerson*, 574 A.2d 1355, 1356 (Me. 1990), and we "must give the affidavit a positive reading and review the affidavit with all reasonable inferences that may be drawn to support the magistrate's determination," *State v. Johndro*, 2013 ME 106, ¶ 9, 82 A.3d 820 (quotation marks omitted).

6

[¶11]    Since 2013, in Maine, law enforcement officers seeking information about the location of an electronic device like a cell phone have been required to obtain a warrant.  16 M.R.S. § 648 (2018).[6]  Recently, the United States Supreme Court held that law enforcement's acquisition of seven days' worth of an individual's historical cell site location information from wireless carriers constituted a search for Fourth Amendment purposes.[7]  *Carpenter v. United States*, 138 S. Ct. 2206 (2018).  In reaching its decision, the Court reasoned that an individual has a "legitimate expectation of privacy in the record of his physical movements as captured through CSLI."  *Id.* at 2217.  The officers investigating these murders complied with *Carpenter* and with 16 M.R.S. § 648 when they sought a warrant to obtain Marble's CSLI; our role is to determine whether there was a substantial basis for the court's finding that the affidavit they presented in requesting that warrant established "probable

---

[6]  Title 16 M.R.S. § 648 has since been amended, but not in any way relevant to this appeal.  *See* P.L. 2019, ch. 489, § 13 (effective Sept. 19, 2019) (to be codified at 16 M.R.S. § 648); P.L. 2017, ch. 144, § 5 (effective June 8, 2017) (codified at 16 M.R.S. § 648 (2018)).

[7]  The Supreme Court left open the question of whether accessing less than seven days of CSLI constitutes a search under the Fourth Amendment.  *Carpenter v. United States*, 138 S. Ct. 2206, 2217 n.3 (2018) ("[W]e need not decide whether there is a limited period for which the Government may obtain an individual's historical CSLI free from Fourth Amendment scrutiny, and if so, how long that period might be.").  Here, because law enforcement obtained a search warrant for Marble's CSLI, we do not address that aspect of the *Carpenter* decision.

cause to believe that the grounds for the search exist[ed]," such as that the records would "constitute[] evidence of the commission of a crime." M.R.U. Crim. P. 41(c), (f)(1); *see Nickerson*, 574 A.2d at 1356.

[¶12] "A finding of probable cause rests on a practical, commonsense determination whether, given all the circumstances set forth in the affidavit, there is a fair probability that . . . evidence of a crime will be found in a particular place." *State v. Simmons*, 2016 ME 103, ¶ 11, 143 A.3d 819 (quotation marks omitted); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (setting forth the "totality-of-the-circumstances" test for probable cause). To support probable cause, a warrant affidavit must "set forth some nexus between the evidence to be seized and the locations to be searched." *Johndro*, 2013 ME 106, ¶ 10, 82 A.3d 820. Thus, an application to search an individual's CSLI typically must establish some connection between the individual and the crime for which the individual's whereabouts may constitute evidence; that connection, however, need not be expressly articulated in the warrant application. *State v. Warner*, 2019 ME 140, ¶¶ 23-26, --- A.3d ---.

[¶13] Here, the information in the affidavit was sufficient to support the judge's determination that there was probable cause to believe that Marble was involved in both homicides and that his CSLI would contain or constitute

8

evidence relevant to that crime. From the facts in the affidavit, the judge who issued the warrant could infer that Marble knew the victims and was in close and very recent contact with them—the male victim worked for Marble in the local drug trade, and Marble had called him nine times over the course of the prior two days, including one call just over an hour before the murders; that Marble had the ability to commit the crime—he had recently acquired two guns; and that Marble likely had a motive—the male victim appeared to owe Marble money and had also burgled Marble's apartment just hours before the murders. Taken together, these facts are sufficient to support the judge's determination that there was a "fair probability" that Marble's historical CSLI would contain evidence of the murders.[8] *Johndro*, 2013 ME 106, ¶ 10, 82 A.3d 820.

The entry is:

Judgment affirmed.

---

[8] We are also unpersuaded by Marble's argument that the trial court erred by instructing the jury on accomplice liability; the evidence at trial was sufficient to support a conviction based on either principal or accomplice liability. *See* 17-A M.R.S. § 57(3)(A) (2018); *State v. Pheng*, 2002 ME 40, ¶ 9, 791 A.2d 925; *State v. Wright*, 662 A.2d 198, 202 (Me. 1995).

Tina Heather Nadeau, Esq. (orally), The Law Office of Tina Heather Nadeau, PLLC, Portland, for appellant David Marble Jr.

Aaron M. Frey, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2017-2176
FOR CLERK REFERENCE ONLY